(No. 41526.—

ROGER M. SIMPSON, Appellee, *vs.* COMPAGNIE NATIONALE AIR FRANCE, Appellant.

*Opinion filed May 28, 1969.*

HARVEY WIENKE, JAMES H. DEVRIES, and JAMES H. RYAN, of MCBRIDE, BAKER, WIENKE & SCHLOSSER, of Chicago, for appellant.

RALPH S. MCFARLAND, of Chicago, for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Roger M. Simpson filed suit in the circuit court of Cook County for refund of $1,341.40 which he had paid to Elizabeth H. Larkin Travel Service, Inc., a travel agency, hereafter referred to as "Larkin", in order to purchase air transportation on Compagnie Nationale Air France, hereafter referred to as "Air France". The plaintiff paid the total sum of $3,868.38 on January 24, 1963, for a European vacation which was to begin on March 26, 1963. No ticket was ever issued and Air France never received any of the funds paid to Larkin. The portion of the total which was claimed from Air France represents the fare for a contemplated return flight from Rome to Paris and then to Chicago.

During February the plaintiff became ill and orally notified Larkin of his desire to cancel his trip and asked refund of the $3,868.38. Shortly thereafter, Larkin filed a voluntary petition in bankruptcy. Simpson then filed "proof of claim" in the bankruptcy court for that amount, less a partial refund which he had received.

In his proof of claim, Simpson stated that "* * * the consideration of said debt or liability is as follows: Payment to the bankrupt for travel fares and accommodations; bankrupt failed to make payment on claimant's behalf for travel fares and accommodations."

Simpson now argues that Larkin was the agent of Air France and that Air France should be liable for the acts or defalcations of its agent.

In addition to dealing with carriers, Larkin planned an itinerary for the trip, arranged for hotel accommodations,

arranged for guides for sightseeing and tours of each city, and set up a schedule so that Simpson would make the best use of his time in Europe. The combination of these functions comprises the business of a "travel agent".

The main argument of Air France is that Larkin was actually a broker, or special agent for Simpson, rather than an agent of the airline. After a bench trial the court entered judgment for Simpson in the amount of $1,241.

The appellate court affirmed the judgment but reduced it to $1,098 because of a conflict between the itinerary and the Air France schedule of flights. (For additional details, see 96 Ill. App. 2d 45.) We granted leave to appeal.

The issue before us is the fundamental question of when a principal-agent relationship comes into being. It is conceded that Larkin is an agent. In our search for the principal we consider both the form and the substance of the transactions in issue.

The characteristics differentiating between a "broker" and an "agent" are clearly set out in *City of Chicago* v. *Barnett*, 404 Ill. 136, 142. The court there said: "A broker is distinguished from an agent in that a broker sustains no fixed and permanent employment by, or relation to, any principal, but holds himself out for employment by the public generally, his employment in each instance being that of special agent for a single object, [citation] whereas an agent sustains a fixed and permanent relation to the principal he represents and owes a permanent and continued allegiance."

Simpson charges that there was a permanent relation between Larkin and Air France, and that Larkin was authorized by Air France to claim to be its agent. He further contends that payment to Larkin for the services rendered would come by way of a commission or fee from Air France. Certain other attributes of an agency relationship are not mentioned. For instance, no mention is made of the duty of loyalty. If Larkin were truly the agent of Air

France, then the airline could demand damages for any failure of the agent to act in its best interests. Yet there can be no suggestion that Larkin would be liable to Air France if Larkin had booked passage on one of the other available and competing international carriers. Such an action would not be in the best interest of Air France, but it would not be compensable. If, as Air France suggests, Larkin was really acting in the capacity of a broker, then Simpson was the principal. Such an interpretation is congruent with the facts here. The record shows that Simpson had made two prior trips which Larkin had planned for him. Larkin rendered numerous services which would be of benefit primarily to the traveler, such as securing lodging and guided tours. In this instance, it is reasonable to infer that Simpson intended to make use of these other services which Larkin offered because he was satisfied with the earlier trips.

This brings us to Simpson's second point. He argues that Larkin had apparent authority from Air France. The record, however, is silent on the indicia which could have induced Simpson to believe that Larkin was an agent of Air France. The name of the travel agency and its letterhead stationery upon which the proposed itinerary was typed make no reference to Air France. The itinerary itself refutes Simpson's statement. It provides for steamship reservations from the United States to Naples, Italy; steamship transportation to Capri; an express train to Rome; a flight from Rome to Paris (no airline was specified); and a flight via Air France from Paris to Chicago. Such an itinerary provides no evidence that Simpson was induced to deal with Larkin because of any apparent authority conferred on the latter by Air France.

In this connection we note that Simpson's proof of claim in the bankruptcy action apparently was filed more than two months prior to the institution of the subject lawsuit. His statement in that document, "bankrupt failed to make pay-

ment on claimant's behalf for travel fares and accommodations," is not consistent with his current theory that he had, in effect, made payment to Air France by paying a person whom he believed to be its agent.

The theory of apparent authority rests on two premises: a manifestation by the principal to a third party, and belief by that third party that the extent of the authority granted to the agent encompasses the contemplated activity. (Restatement (Second) Of Agency (1958) § 8.) In this case the record does not indicate that Air France had conveyed to Simpson any information that was inconsistent with Larkin's actual authority. Further, the record does not establish that Simpson believed that Larkin had any extended authority.

There undoubtedly are many situations where Larkin could become the agent of Air France. But in this case, Air France was unaware of any dealings between Larkin and Simpson until long after the bankrupty had occurred. "He [the broker] is primarily the agent of the person who first employs him, and he cannot, without the full and free consent of both, be, throughout the transaction, the agent of both parties. Without such consent, he can only act as the agent of the other party when the terms of the contract are fully agreed upon between the principals." 1 F. Mechem (1914), A Treatise On the Law of Agency, 2d Ed. p. 44.

In our judgment Larkin was the agent of Simpson for the purpose of planning and implementing a European trip. Accordingly, the judgment of the appellate court is reversed.

*Judgment reversed.*