NO. 3-96-0533

                                  IN THE 

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1997

ESG WATTS, INC.                 )                                

                                )   

     Petitioner-Appellant,      )  

                                )

     v.                         )

                                )

ILLINOIS POLLUTION CONTROL      )

BOARD and the ILLINOIS          )  

ENVIRONMENTAL PROTECTION        )

AGENCY                          )

                                )

     Respondent-Appellees.      )  Petition for Review of an Order 

                                )  of the Illinois Pollution 

CONS WITH: 3-96-0562            )  Control Board

                                )

ILLINOIS ENVIRONMENTAL          )  No. PCB 94-23

PROTECTION AGENCY,              )

                                )

     Appellant,                 )

                                )

     v.                         )

                                )

ILLINOIS POLLUTION CONTROL      )

BOARD, et al.,                  )

                                )

     Appellees.                 )

                                                                  

                                     

            JUSTICE BRESLIN delivered the opinion of the court:

                                                                  

     ESG Watts, Inc. (Watts) appeals the Illinois Pollution Control

Board's (Board) decision affirming the Illinois Environmental

Protection Agency's (Agency) denial of seven waste stream permit

applications.  The Agency appeals a Board sanction requiring that

it pay Watts' attorney $1,250 for fees incurred because the Agency

failed to meet the Board's briefing deadline.  We hold that the

Board's decision affirming the Agency's denial of the waste permits

was not against the manifest weight of the evidence.  We therefore

affirm the ruling. (3-96-0533).  However, we hold that the Board

lacked the authority to order the Agency to pay Watts' attorney

fees, and we thus reverse that ruling.  (3-96-0562).

                                BACKGROUND

     Watts owned three landfills in Illinois.  Its site known as

Taylor Ridge was located in Rock Island County.  The other two

sites, known as the Viola Landfill and the Sangamon Valley

Landfill, were located in Viola and Springfield respectively.  Only

Taylor Ridge was operating at the time of this appeal.  Beginning

in May 1994 Watts started sending permit applications for its

Taylor Ridge site to the Agency.  Renewal applications for the

acceptance of "generic" waste streams, wastewater treatment sludge

from ink, button dust, calcium sulfite cake, and buffing dust waste

were all denied.  Additionally, the Agency denied two new

applications for Taylor Ridge to receive waste sulfur cement and

paint sludge.  In all, seven applications were denied for the

Taylor Ridge site.  

     The Agency based its denials on section 39(i)(1) of the

Illinois Environmental Protection Act (Act). 415 ILCS 5/39(i) (West

1994).  Section 39(i)(1) provides: 

     (i)  Before issuing any RCRA permit for the conduct of any

     waste-transportation or waste-disposal operation, the Agency

     shall conduct an evaluation of the prospective operator's

     prior experience in waste management operations.  The Agency

     may deny such a permit if the prospective operator or any

     employee or officer of the prospective operator has a history

     of:

          (1)  repeated violations of federal, State, or local

          laws, regulations, standards, or ordinances in the

          operation of refuse disposal facilities or sites;

                              * * *

415 ILCS 5/39(i) (West 1994).

     As evidence of repeated violations, the Agency cited a circuit

court action (People v. Watts Trucking et al., 91-CH-242) and 19

administrative citations against Watts over a seven year period. 

The action in the circuit court concerned violations in the

Sangamon Valley Landfill in Springfield.  It resulted in $350,000

in penalties being levied just six months before the first denial. 

The judgment was one of the single highest penalties assessed

against a landfill owner in Illinois.  With regard to the 19

administrative citations, four related to operations at Taylor

Ridge, with the most recent of the four taking place in 1989. 

Furthermore, as another reason for denying the permit applications,

the Agency identified "technical difficulties" in six of the seven

permit applications.  These difficulties included the failure to:

properly identify the waste; provide the proper land waste code;

provide copies of laboratory papers and demonstrate that certain

tests had been performed.          

     Watts appealed the seven permit denials to the Board.  The

Board affirmed the denial of the applications.  Although it

affirmed the decision, the Board noted that the technical

difficulties were not supported by the record and were not

dispositive of the issue relating to section 39(i).  However, the

Board upheld the decision because Watts' past history of violations

clearly "demonstrat[ed] an example of an appropriate use of section

39(i) * * * *."  The Board also ordered the Agency to pay $1,250 in

attorney fees to Watts' attorney for fees incurred in attempting to

exclude an untimely Agency brief.  Both Watts and the Agency

appeal. 

     This is a relatively short statement of the facts.  We will

discuss additional facts relevant to the individual issues as each

is analyzed. 

                                 ANALYSIS

     When reviewing a decision of the Illinois Pollution Control

Board, the court's function is not to reweigh the evidence or make

an independent assessment of the facts.  Illinois Environmental

Protection Agency v. Illinois Pollution Control Board, 252 Ill.

App. 3d 828, 624 N.E.2d 402 (1993).  Rather, the court must

evaluate the evidence to ascertain whether the Board's decision was

contrary to the manifest weight of the evidence.  Environmental

Protection Agency v. Pollution Control Board, 115 Ill. 2d 65, 503

N.E.2d 343 (1986).  If any evidence in the record fairly supports

the action taken by an administrative agency, the decision must be

sustained on appeal.  Farmers State Bank v. Department of

Employment Security, 216 Ill. App. 3d 633, 576 N.E.2d 532 (1991). 

                           Operator Specificity     

     Watts asserts that the Agency's review of operations at

facilities other than the facility seeking the permits was

improper.  In its written decision, the Board ruled that section

39(i) is operator-specific and not facility-specific and,

therefore, reasoned that the Agency could consider repeated

violations at sites other than the Taylor Ridge site when

determining whether to grant the waste permits.  Watts contends,

however, that section 39(i) is facility-specific and that it was

inappropriate to consider violations at any sites other than Taylor

Ridge because they bore no rational relation to events at Taylor

Ridge.

     The overriding objective in interpreting a statute is to

ascertain and give effect to the intent of the legislature.  Roser

v. Anderson, 222 Ill. App. 3d 1071, 584 N.E.2d 865 (1991).  A court

should first look to the statutory language as the best indication

of legislative intent.  Veterans Assistance Commission of Will

County v. County Board of Will County, 274 Ill. App. 3d 32, 654

N.E.2d 219 (1995).  

     Section 39(i) provides that the Agency, when determining

whether to grant a permit, must evaluate the "prospective

operator's prior experience in waste management operations."  415

ILCS 5/39(i) (West 1994).  The Agency may deny a permit because of

"repeated violations * * * in the operation of refuse disposal

facilities or sites * * * * (emphasis added)." 415 ILCS 5/39(i)(1)

(West 1994).  

     The language of the statute does not limit the review of

violations to the facility seeking permits.  Rather, we find that

the statute is clear in providing that the Agency may consider

violations at other sites operated by the owner.  Therefore, we

hold that section 39(i) is operator-specific, not facility-

specific. 

                      Board's Standard of Review     

     Watts argues that the Board applied an improper standard of

review when it reviewed the Agency's denials.  It contends that

since section 39(a) of the statute (415 ILCS 5/39(a) (West 1994))

provides that the Agency shall issue a permit upon proof that a

facility will not cause a violation of the Act, the true question

in front of the Board is whether the Agency acted in an arbitrary

and capricious manner.  We disagree that this is the Board's

standard of review.

     Generally, the Board does not apply the arbitrary and

capricious standard to decisions made by the Agency.  Rather, the

Board reviews the information which the Agency relied on in making

its decision.  See Alton Packaging Corp. v. Illinois Pollution

Control Board, 162 Ill. App. 3d 731, 516 N.E.2d 275 (1987). 

Thereafter, the Board places the burden on the petitioner to prove

that it is entitled to a permit and that the Agency's reasons for

denial are either insufficient or improper.  ESG Watts, Inc. v.

Illinois Environmental Protection Agency, Ill. Pollution Control

Bd. Op. 94-243 (Consolidated) (March 21, 1996).  

     To require the Board to review the Agency decision under an

arbitrary and capricious standard in this case would essentially

remove the procedural safeguards of the administrative appeal

process.  The decision of the Agency would, in effect, be

insulated, because the Board's review would be limited to a

determination of whether the action was arbitrary rather than

appropriate and supported by the evidence.  Moreover, we are

concerned that, due to the time restraints placed on the Agency, it

cannot hold full hearings to develop the issues of the case. 

Accordingly, it is essential that the Board provide hearings and

allow the petitioner an opportunity to challenge the validity of

the decision made by the Agency.  To require another standard of

review would interrupt the administrative continuum which becomes

complete after the ruling of the Board.  Illinois Environmental

Protection Agency v. Illinois Pollution Control Board, 138 Ill.

App. 3d 550, 486 N.E.2d 293 (1985), aff'd, 115 Ill. 2d 65, 503

N.E.2d 343 (1986).  Therefore, we hold that the Board's process of

reviewing the analysis by the Agency and placing the burden on the

applicant to demonstrate that the denial was unwarranted under

section 39(i) is a proper method of review.

                    Pre-Determination of Permit Denials

     Watts contends that the Agency exercised an improper pre-

determination because the Agency made its decision to deny Watts'

application before it received a response to letters sent to Watts

informing it of the prospective reasons for denials and requesting

an explanation as to why the denials would be improper.

     In Wells Manufacturing v. Illinois Environmental Protection

Agency, 195 Ill. App. 3d 593, 552 N.E.2d 1074 (1990), the court

held that it was improper for the Agency to deny an applicant a

permit based upon alleged violations of the Act without providing

the applicant an opportunity to submit information which would

disprove the alleged violations.  After the Wells decision, the

Agency began to send so-called "Wells letters" to applicants to

provide them with an opportunity to respond to potential grounds

for denial before a denial letter is issued.

     Watts contends that the sending of Wells letters in this case

was a "sham" because the Agency had already decided to deny the

applications before the responses were mailed back.  Watts points

to the permit reviewer's notes dated before Watts' response to all

the Wells letters were even returned in this case.  The reviewer

noted, with respect to the last two permit applications, that

"[s]ince the application is being denied anyway due to past

adjudicated violations, I included this [technical] deficiency as

a denial point."  Watts asserts that this notation is clear and

unequivocal evidence that the Agency made up its mind to deny the

applications before Watts responded to the Wells letter, thus

denying Watts a meaningful opportunity to be heard.

     The Board, however, found that sufficient evidence was

presented to the contrary.  Specifically, the Board accepted the

permit reviewer's testimony that he reviewed the responses and

discussed them with others at the Agency.  We find that the Board's

decision was not against the manifest weight of the evidence.

                Enforcement Guidelines and Equal Protection

     Watts argues that the Agency has not developed any guidelines

for the enforcement of section 39(i) and thus cannot meet its

statutory obligation to investigate the conduct of applicants. 

Watts also contends that the result allowed for the discretionary

application of section 39(i) in violation of the Equal Protection

Clause, U.S. Const. amend. XIV.

     Although the Agency has not adopted any procedures with

respect to section 39(i), it does not follow that the Agency cannot

properly evaluate applicants.  The Agency cannot be expected to

establish procedures for every conceivable circumstance.  See

Strube v. Illinois Pollution Control Board, 242 Ill. App. 3d 822,

610 N.E.2d 717 (1993) (statute which authorized Agency to adopt

reasonable and necessary rules for the administration of

underground storage tanks did not require it to promulgate rules

for every circumstance).  The Agency is only required to have

reasonable and necessary rules when it adopts procedures.  Strube,

242 Ill. App. 3d at 829, 610 N.E.2d at 722.

     In this case, although no specific written procedures were

followed to evaluate the permit applications, we find that the

evaluation process was sufficient.  The permit reviewer made

inquiries to the different sections of the Agency, and the Field

Operating Section returned comments.  Wells letters were also sent

out.  From the information gathered, the reviewer was able to

ascertain that Watts had a record of serious and repeated

violations to which section 39(i) applied.  Furthermore, the

decision was reviewed by the Board, providing the safeguards of due

process.  See Strube, 242 Ill. App. 3d at 829, 610 N.E.2d at 722

(citing Environmental Protection Agency v. Pollution Control Board,

115 Ill. 2d 65, 503 N.E.2d 343 (1986)).  

     As for Watts' equal protection claim, we find that it is

without merit.  Equal protection is denied when state officers

enforce a statute in a discriminatory manner but only if the

discrimination is intentional and purposeful.  Beverly Bank v.

Board of Review of Will County, 117 Ill. App. 3d 656, 453 N.E.2d 96

(1983).  To establish a discriminatory purpose, plaintiff must show

more than an arbitrary application of statutes and rules.  Beverly

Bank, 117 Ill. App. 3d at 664, 453 N.E.2d at 101.   Plaintiff must

show that the decision maker singled out a particular group for

disparate treatment and acted, at least in part, to cause adverse

effects on the identifiable group.  Beverly Bank, 117 Ill. App. 3d

at 664, 453 N.E.2d at 101.  

     Watts has not shown that it is part of an identified group. 

Additionally, Watts has not demonstrated that the Agency acted to

cause adverse affects.  On the contrary, the effects of the denials

were those sought by the statute, and there was no demonstration of

a discriminatory purpose.  Moreover, although Watts has suggested

that a lack of procedures may lead to arbitrary enforcement, Watts

has not established that there was an arbitrary application of the

statute in its case.  Therefore, we reject this argument.

                          Delegation of Authority

     Watts argues that the legislature's delegation of

discretionary authority to the Agency in section 39(i) is invalid. 

Although Watts failed to raise this issue before the Board, we find

that it is central to this case and should be reviewed on appeal. 

See Augsburg v. Frank's Car Wash, Inc., 103 Ill. App. 3d 329, 431

N.E.2d 58 (1982) (reviewing court may decline to apply waiver

doctrine in order to achieve a just result).

     Watts asserts that the legislature provided no intelligible

standards for the Agency to follow when enforcing 39(i).  It

complains that no guidance is provided to the Agency other than an

evaluation of the prospective operator's prior experience in waste

management.  It argues that elements such as recency, severity, or

good faith efforts to comply are essential points to consider when

determining the status of an applicant.

     Where the legislature vests discretionary authority in an

administrative agency, intelligible standards must be provided to

guide the exercise of the agency's discretion.  Balmoral Racing

Club v. Illinois Racing Board, 151 Ill. 2d 367, 603 N.E.2d 489

(1992).  Failure to provide such standards renders the statute

void.  Balmoral, 151 Ill. 2d at 391, 603 N.E.2d at 498.  A

delegation of legislative authority is constitutional only if the

legislature provided sufficient identification of: (1) the persons

and activities potentially subject to regulation; (2) the harm

sought to be prevented; and (3) the general means intended to be

available to the administrator to prevent the identified harm. 

Friendship Facilities, Inc. v. Region 1B Human Rights Authority,

167 Ill. App. 3d 425, 521 N.E.2d 578 (1988).  

     We find that the legislature provided appropriate standards to

guide the exercise of the Agency's discretion.  Section 39(i)

provides that "prospective operators" are the parties subject to

regulation, and the activity subject to regulation is the obtaining

of the permits. 415 ILCS 5/39(i)(West 1994).  The harm to be

prevented is that of granting a prospective operator a permit when

the operator's past conduct suggests that granting a permit may

create a risk. See 415 ILCS 5/39(i).  The means available to

prevent the harm is clearly the denial of the application following

an investigation into the applicant's background. 415 ILCS 5/39(i). 

The investigation may inquire as to: (1) repeated violations in the

operation of refuse disposal sites; (2) a conviction of a felony;

or (3) proof of gross carelessness in handling or disposing of any

hazardous waste.  415 ILCS 5/39(i).  Whether the Agency should be

required to consider factors such as recency, severity, or good

faith efforts to comply is an issue that is more appropriately left

to the legislature.      

               Consideration of Non-Adjudicated Violations 

     The Agency permit reviewer learned of alleged violations

during an investigation performed under the authority given by

section 39(i).  The alleged violations involved Watts' failure to

submit a "significant modification" application which was required

for a modification planned at its Taylor Ridge site.  The

information was acquired from the Agency's Field Operation Section

which recommended to the reviewer that the applications be denied

due to the alleged violation as well as other adjudicated

violations.

     Watts contends that the Agency acted improperly when it

considered the alleged violations.  It argues that since section

39(i) only permits the Agency to consider past adjudicated

violations, its reliance on the non-adjudicated violation was

improper and mandates a reversal.  If the Board relied solely on

the non-adjudicated violation we would agree with Watts on this

point, but the record does not bear out that contention.

     While the permit reviewer testified that he considered the

Field Operating Section comments when he examined the permit

applications, the Agency did not include the alleged violation in

its denial letters which were sent to Watts.  The Board has

determined that it is the denial letter which frames the issue in

a permit appeal to the Board.  See Pulitzer Community Newspapers v.

Illinois Environmental Protection Agency, Ill. Pollution Control

Bd. Op. 90-142 (December 20, 1990); Centralia Environmental

Services, Inc. v. Illinois Environmental Protection Agency, Ill.

Pollution Control Bd. Op. 89-170 (May 10, 1990).  Because the

reasons set forth in the denial letters were sufficient to support

the Agency's actions, the permit reviewer's consideration of the

unadjudicated violations was not prejudicial and did not taint the

decision.  Thus, while it may have been improper to consider the

unadjudicated violations, (see Martell v. Mauzy, 511 F. Supp. 729

(N.D. Ill. 1981) (due process limitations applied to Agency's

decision denying renewal of operating permits based on alleged

violations)), a reversal is not necessary because there was a

sufficient basis for the Agency's actions.

                  Permitting Process as Enforcement Tool

     Watts claims that the denial of the permits was an

impermissible use of the permitting process as an enforcement tool.

In support of its argument, Watts cites Illinois Environmental

Protection Agency v. Illinois Pollution Control Board, 252 Ill.

App. 3d 828, 624 N.E.2d 402 (1993).  In that case, this Court

affirmed the Board's finding that the Agency improperly used the

permit denial process as an enforcement tool because the evidence

demonstrated that the Agency denied permit applications based on

alleged violations of the Act.  In the present case, however, the

Board found that the record did not support Watts' contention that

the Agency relied on unadjudicated violations when it made its

decision to deny the permit applications.  We conclude that the

Board's findings are reasonable and not against the manifest weight

of the evidence.  Therefore, we hold that the denials were not an

impermissible use of the permitting process as an enforcement tool.

                          Sufficiency of Evidence

     Watts argues that the Board's ruling is contrary to the

manifest weight of the evidence because the Board could not

properly rely on the circuit court action concerning the Sangamon

Valley Landfill as well as the 19 administrative citations. Watts

points to the Board's decision where it stated that "the

seriousness of the violations that occurred at the Sangamon Valley

Landfill, together with the 19 adjudicated administrative citations

against Watts, are sufficient cause to justify the Agency's denials

in this case."  Watts asserts that since this conclusion rests

equally upon the Sangamon Valley occurrence and the 19

administrative citations, if the Board's findings concerning one or

the other are against the manifest weight of the evidence, then the

decision is against the manifest weight of the evidence.  

     We reject this argument because the Board did not state that

it had relied equally upon both factors.  Moreover, considering the

violations separately, we find that there was sufficient evidence

of past adjudications to support the Board's decision.

                            Adequacy of Notice

     Watts contends that the Agency failed to provide sufficient

notice of the reasons for denial of the permits.  However, Watts

failed to raise this issue in the proceeding before the Board. 

Hence, it waived the right to raise the issue on appeal.  See

Miller v. Pollution Control Board, 267 Ill. App. 3d 160, 642 N.E.2d

475 (1994) (failure to object during administrative proceeding

waives right to raise the issue on appeal).

               Application of 35 Ill. Adm. Code § 745.141(b)

     Because no administrative procedures were adopted by the

Agency to enforce section 39(i), the Board employed 35 Ill. Adm.

Code § 745.141(b) (1987), the regulations implemented for the

enforcement of 415 ILCS 5/22.5 (West 1994).  Section 22.5

establishes the standards for certification of personnel operating

disposal facilities and sites.  The provisions of section 22.5 are

virtually identical to section 39(i) in that certification can be

denied to prospective operators due to repeated violations,

convictions, and gross carelessness.  415 ILCS 5/22.5 (West 1994). 

However, section 745.141(b) permits certain mitigating factors to

be taken into account when enforcing section 22.5.  Specifically,

the Agency may consider the severity of the conduct, how recently

the event took place and the degree of control exerted over the

disposal operations by the applicant.  35 Ill. Adm. Code §

745.141(b) (1987).

     Watts argues that the Board's review pursuant to 35 Ill. Adm.

Code § 745.141(b) (1987) caused it to reach an erroneous decision. 

Specifically, Watts contends that the Board's findings that the

adjudicated violations were sufficiently severe and recent were

erroneous.     

     Contrary to Watts' assertions, the Board could reasonably

infer the severity of Watts' past violations from the record and

conclude that the citations were sufficiently recent.  Given the

apparent severity, recency and quantity of violations committed, 

we hold that the Board's decision was not against the manifest

weight of the evidence.

                      Sanction Authority of the Board

     After a hearing on the consolidated permit appeals in December

1995, Watts filed its required post-hearing brief on January 12

pursuant to an arranged briefing schedule.  The Agency failed to

file its brief by January 26, as called for by the schedule. 

Eventually, on February 7, 1996, the Agency moved to file the post-

hearing brief instanter.  Watts had moved to exclude the brief,

however, the Board determined that the case was one of first

impression and briefing by both parties was desirable.  The Board

thus directed the Agency to file its brief and to pay a sanction of

$1,250 to Watts for the legal expenses incurred by Watts in its

attempt to exclude the Agency's brief.

     At issue is whether the Board had the authority to impose a

sanction of attorney fees.  

     In cases other than where a court exercises its inherent

powers and issues a contempt citation, specific authority to award

attorney fees must be granted.  See Cummings v. Beaton &

Associates, Inc., 249 Ill. App. 3d 287, 618 N.E.2d 292 (1992).  In

the absence of statutory authority or an agreement specifically

authorizing them, attorney fees and other ordinary expenses of

litigation may not be awarded.  Sanelli v. Glenview State Bank, 126

Ill. App. 3d 411, 466 N.E.2d 1119 (1984); Chicago Title & Trust Co.

v. Walsh, 34 Ill. App. 3d 458, 340 N.E.2d 106 (1975).  Statutes

which allow for the recovery of attorney fees must do so by

specific language. Miller v. Pollution Control Board, 267 Ill. App.

3d 160, 642 N.E.2d 475 (1994); State Farm Fire and Casualty Co. v.

Miller Electric Co., 231 Ill. App. 3d 355, 596 N.E.2d 169 (1992). 

When the language of the statute does not specifically indicate

that "attorney fees" are recoverable, the courts will not give the

language an expanded meaning. See Qazi v. Ismail, 50 Ill. App. 3d

271, 364 N.E.2d 595 (1977) (citing Waller v. Board of Education of

Century Community Unit School District, 28 Ill. App. 3d 328, 328

N.E.2d 604 (1975) (courts consistently deny recovery of attorney

fees where such language as "attorney fees" has not been included

in the statute)); State Farm Fire and Casualty Co., 231 Ill. App.

3d at 359-60, 596 N.E.2d at 171-72.

     The Board argues that it had the authority to impose the

sanction under 35 Ill. Adm. Code § 101.280(a)(7) (1989).  Section

101.280(a)(7) provides:

     (a)  If a party or any person unreasonably refuses to

     comply with any provision of 35 Ill. Adm. Code 101

     through 120 or fails to comply with any order entered by

     the Board or the hearing officer * * *, the Board will

     order sanctions.  In addition to remedies elsewhere

     specifically provided, the sanctions may include, among

     others, the following:

                              * * *

          (7)  That the offending person pay the amount of

     reasonable expenses incurred in obtaining an order

     pursuant to this Section.

     35 Ill. Adm. Code § 101.280 (1989).  In support of its argument,

the Board cites Grigoleit Co. v. Illinois Pollution Control Board,

245 Ill. App. 3d 337, 613 N.E.2d 371 (1993).  In Grigoleit, the

petitioner sought sanctions against the Agency because it had

repeatedly refused to issue a permit in contradiction to a Board

order to do so.  The matter had been previously remanded to the

Agency twice in order that the permit be issued.  When the matter

arrived in front of the Board a third time, the Board ordered that

the permit be issued and, as a sanction, required that the permit

be issued without conditions.  On appeal, the fourth district court

of appeals held that the Board's sanction against the Agency was

insufficient and remanded the case back to the Board with

directions to award attorney fees to the applicant.  Grigoleit, 245

Ill. App. 3d at 348, 613 N.E.2d at 378.

     We do not find Grigoleit persuasive.  The Grigoleit court

reasoned that attorney fees were appropriate based on the Board's

broad discretion to impose sanctions, (see Grigoleit, 245 Ill. App.

3d at 346, 613 N.E.2d at 377 (citing Environmental Protection

Agency v. Celotex Corp., 168 Ill. App. 3d 592, 522 N.E.2d 888

(1988)), and the language in section 101.280(a)(7).  However,

subsection (a)(7) does not specifically mention attorney fees. 

Although (a)(7) permits the recovery of "reasonable expenses in

obtaining an order," (35 Ill. Adm. Code § 101.280 (1989)), it does

not specifically state that "attorney fees" are an available

remedy. 

     The Board insists that the requirement of specificity in the 

statute is limited to circumstances in which a party has

"prevailed" in the litigation.  We disagree.

     In cases where the inherent power of a court is not exercised,

the absence of specific authority permitting an award of attorney

fees prevents the shifting of fees to another party.  This is the

case regardless of whether or not the litigation has ended on its

merits and one litigant has prevailed.  See 155 Ill. 2d R. 137

(attorney fees available for papers signed in violation of rule);

5 ILCS 100/10-55 (West 1994) (untrue allegations made by

administrative agency without reasonable cause subjects agency to

burden of paying opposing party's reasonable attorney fees); Bank

of Waukegan v. Epilepsy Foundation of America, 163 Ill. App. 3d

901, 516 N.E.2d 1337 (1987) (court lacked statutory authority to

award attorney fees where one party requested continuance on date

set for trial); Freeman v. Myers, 191 Ill. App. 3d 223, 547 N.E.2d

586 (1989) (attorney fees improperly awarded where attorney's

actions caused mistrial because no statutory authority existed);

Sanelli v. Glenview State Bank, 126 Ill. App. 3d 411, 466 N.E.2d

1119 (1984) (party seeking fees for discovery violation failed to

base motion on specific statutory authority); Central Illinois

Public Service Co. v. Westervelt, 35 Ill. App. 3d 777, 342 N.E.2d

463 (1976), aff'd, 67 Ill. 2d 207, 367 N.E.2d 661 (1977) (request

for fees denied after mistrial was granted due to absence of

statutory authority or agreement between parties).  Therefore, as

no specific statutory authority or agreement supported the Board's

award of attorney fees, we hold that the Board lacked the authority

to order the Agency to pay Watts' attorney fees as a sanction.

     For the foregoing reasons, the decision of the Illinois

Pollution Control Board is affirmed in part and reversed in part.

     Affirmed in part, reversed in part.     

     LYTTON, P.J., and HOMER, J., concurring.